UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JERRY W. FOX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV1138MLM |
| ) | |
| JANET SCHNEIDER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the court is the Motion for Summary Judgment filed by Defendants Janet Schneider, Bronie Walker, Rubeno Curtis, Michael Henry, and Louvenia Williams. Doc. 52. Plaintiff Jerry W. Fox filed a Response. Doc. 66. Defendants filed a Reply. Doc. 68. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 60.

## STANDARD FOR SUMMARY JUDGMENT

The court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. With these principles in mind, the court turns to an analysis of Defendants' motion.

## UNDISPUTED FACTS[1]

Plaintiff was a parolee residing at the St. Louis Community Release Center ("SLCRC") on July 5, 2008, and had resided there since March 27, 2008. Defendants Walker, Curtis, and Williams were employed at the SLCRC as Probation and Parole Officers I on July 5, 2008. Defendant Henry was employed at the SLCRC as a Probation and Parole Officer II on July 5, 2008. Defendant Schneider was employed at the SLCRC as the Superintendent on July 5, 2008. Defendant Schneider was primarily responsible for the administration of the facility and did not deal with the residents on a day to day basis, as that was done by the staff in the units.

---

[1] The facts are undisputed unless otherwise stated.

The SLCRC is a facility that houses parolees in a dormitory like fashion. The residents are not on inmate status. Some residents leave the facility during the day to work, but all residents have the opportunity to earn passes to leave the facility. Within the facility, residents are allowed to be in their units, the hallway, or the smoking area. In July 2008, there were approximately 500 residents in the SLCRC.

Each of the Defendants testified in their depositions that, prior to the altercation at issue, he or she did not have any knowledge of any circumstances that would lead to any conflict between Plaintiff and SLCRC resident Marcus Smith and that he or she did not have any knowledge that circumstances existed that would create any substantial risk of injury to any resident at the SLCRC from a physical altercation with an attack from another resident. In their depositions, Defendants Walker, Curtis, Williams, and Henry testified that, prior to the altercation at issue, he or she did not have any knowledge or information regarding any prior situation where any resident of the SLCRC had a physical altercation with or attacked any other resident on the first shift, meaning between midnight and eight o'clock a.m., or that they had any knowledge or information regarding any prior situation where a resident of the SLCRC had a physical altercation with or attacked any other resident. Defendant Schneider, who did not deal with residents on a day-to-day basis, testified that, to her knowledge, incidents of physical altercations between residents of the SLCRC were rare.

Plaintiff's expert, Brad Hompe, testified in his deposition that reports of inmate on inmate assault at the SLCRC occurred because of failures to conduct safety checks according to policy. See Pl. Ex. 2. Hompe cited thirteen reports of altercations. Out of these thirteen incidents, three involved an inmate and a correctional officer. Only one incident resulted in a participant requiring

medical attention.[2] That incident, which took place on January 1, 2003, involved an inmate and a correctional officer. One of the thirteen incidents occurred offsite between an inmate and an unknown assailant. In approximately the eighteen months prior to July 5, 2008, there were two incidents of altercations, neither of which resulted in the participants receiving medical treatment. One of these two incidents occurred on January 10, 2007, and the other occurred June 18, 2007. None of the incidents cited by Hompe occurred in the laundry room at the SLCRC. See Pl. Ex. A.

Plaintiff testified that, prior to the altercation at issue, he felt safe in the SLCRC, including the laundry room; that he did not witness any physical altercations between or among any residents at the SLCRC; and that he did not have any knowledge or information from any source regarding any physical altercations between or among any residents at the SLCRC.

There were cameras in the laundry room of the SLCRC on July 5, 2008. At the time of the altercation at issue, none of the Defendants was watching the cameras. Further, Defendants were not present in the south laundry room or in the hallway outside the laundry room during the altercation at issue between Plaintiff and Marcus Smith. On July 5, 2008, Plaintiff went to the south laundry room at approximately four o'clock a.m. to do laundry. At the time, Marcus Smith and Herschel Ashley were also in the laundry room. Plaintiff talked with Ashley for twenty minutes as Plaintiff's cloths were in the washing machine. After Plaintiff's clothes were washed, he waited another ten to fifteen minutes for a dryer to become available. When Plaintiff tried to put his clothes in a dryer, Smith directed Plaintiff to remove his clothes from the dryer because Smith was saving the dryer for his friend "Darnell." When Plaintiff refused to remove his clothes from the dryer, Smith suddenly started punching Plaintiff. Plaintiff backed into the hallway while Smith was hitting him. Smith

---

[2] The reports of the other twelve incidents reflect either that medical attention was declined and/or that no medical attention was received by the participants. Pl. Ex. 4.

4

punched Plaintiff approximately eight to ten times. Plaintiff then grabbed Smith to prevent from being hit in the face, at which point Smith picked Plaintiff up and threw him on the ground. Plaintiff got up off the ground and went to the control station to inform the officers what had happened. The altercation started at about 5:06 a.m. and took no more than a minute. Plaintiff was taken to St. Louis University Hospital where he was diagnosed with a crushed vertebra requiring two surgeries.

Prior to the altercation at issue, Plaintiff did not have any problems with Smith and never complained about Smith in any manner. On the morning in question, Defendant Williams patrolled the unit where the altercation occurred approximately two minutes prior to the altercation.

In Count I of his Complaint, Plaintiff alleges a violation of 42 U.S.C. § 1983. In particular, Plaintiff alleges that Defendants, who were acting under color of State law, deprived Plaintiff of his rights under the Fourteenth Amendment to the United States Constitution; that Defendants had a custom, practice, and/or policy of deliberate indifference to the excessive security risks of residents at the SLCRC by failing to properly patrol and supervise all areas of the SLCRC; that Defendants had actual knowledge of the excessive security risks posed to Plaintiff and were deliberately indifferent to those risks by failing to institute proper patrol practices to guard against that known risk; that Defendants failed to use reasonable care to protect Plaintiff from known excessive risks of injury by other residents at the SLCRC; that the SLCRC had cameras in the laundry room but no one was watching the inmates on July 5, 2008; that Defendants knew that Plaintiff faced an excessive risk of attack by other residents and failed to respond reasonably to abate that risk; that Defendants' actions constituted deliberate indifference in the execution of Defendants' ministerial duties; and that, as a direct and proximate result of Defendants' deliberate indifference, Plaintiff suffered damages and will continue to suffer damages. In Count III, Plaintiff seeks punitive damages for the violation of § 1983

alleged in Count I. In particular, in Count III, Plaintiff contends that Defendants showed a callous and reckless disregard for Plaintiff's safety and federally protected rights.[3] Defendants seek summary judgment in their favor as to both Counts I and III. Defendants contend that summary judgment should be granted as to Plaintiff's deliberate indifference claim because the undisputed facts establish that the SLCRC provided a very safe environment for residents and that Defendants had no knowledge that any altercation between Plaintiff and Smith would occur. Alternatively, Defendants contend that they are entitled to qualified immunity.

## LEGAL FRAMEWORK and DISCUSSION

**A.    Deliberate Indifference:**

The United States Constitution requires prison officials to take "reasonable measures to guarantee the safety of the inmates [and] ... to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (quotations omitted). The Eighth Circuit recognizes that there is both an objective and a subject component of establishing a constitutional violation in this regard. Crow v. Montgomery, 403 F.3d 598, 602 (8th Cir. 2005) (citing Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir.2003); Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir.1998)). A plaintiff must establish that the condition of which he complains posed a substantial risk of serious harm (the objective component) and that the defendants "actually knew of but disregarded, or were deliberately indifferent to, [the plaintiff's] health or safety (subjective component)." Id. The risk must be "sufficiently serious" so that failing to act on it would "result in the denial of 'the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Negligence or even gross negligence does not amount to deliberate indifference. Id. at 835-36; see also Tucker v. Evans, 276 F.3d 999, 1002 (8th

---

[3]    The court granted the parties' Stipulation for Dismissal of Count II. Doc. 25.

Cir. 2002). "[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." Farmer, 511 U.S. at 836; see also T.S. Falls v. Nesbitt, 966 F.2d 375, 378 (8th Cir. 1996) ("To establish 'reckless disregard' by prison officials, an inmate must show that he was faced with a 'pervasive risk of harm' and that the prison officials failed to respond reasonably to that risk.") (quoting Andrews v. Siegel, 929 F.2d 1326, 1330 (8th Cir. 1991)).

A pervasive risk is not established by "pointing to a single incident or isolated incidents," although there need not been a "reign of violence and terror." Id. (quoting Andrews, 929 F.2d at 1330). A constitutional violation is not established even if there was a substantial risk which officials should have, but failed to perceive. Farmer, 511 U.S. at 838 ("But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). The requisite risk requires that violence occur "with sufficient frequency that prisoners ... are put in reasonable fear for their safety and to reasonably apprise prison officials of the existence of the problem and the need for protective measures." T.S. Falls, 966 F.2d at 378 (quoting Andrews, 929 F.2d at 1330).

Thus, in order to establish deliberate indifference in violation of the Constitution, Plaintiff in the matter under consideration must establish that his doing laundry in the south laundry room at the SLCRC at four o'clock a.m. on July 5, 2008, posed a substantial risk of serious harm and that Defendants knew of, but disregarded, that risk. Significantly, it is undisputed that, prior to the altercation at issue, Defendants did not have any knowledge or information that circumstances existed that would create any substantial risk of injury to any resident at the SLCRC from a physical altercation with or an attack from another resident of the SLCRC. Further, it is undisputed that Defendants Walker, Curtis, Williams, and Henry had no knowledge or information regarding any

7

prior situation where a resident of the SLCRC had a physical altercation with or was attacked by another resident in the laundry room of the SLCRC. Plaintiff, moreover, had no such knowledge nor did he ever complain about safety conditions at the SLCRC prior to the altercation. Specifically, it is undisputed that Plaintiff did not have any problems with Smith prior to the altercation and never complained about Smith in any manner. See T.S. Falls, 966 F.2d at 378-79 (finding no constitutional violation where the plaintiff testified that prior to the stabbing, he had no reason to believe that the perpetrator would try to kill him and holding that "[a] single episode of violence, without warning or suspicion, is insufficient to establish a pervasive risk of harm, particularly when the injured inmate views the attack as an isolated incident"). Additionally, prior to the altercation at issue, Plaintiff did not witness any physical altercations between or among any residents of the SLCRC nor did he have any knowledge or information from any source regarding any such physical altercations.

To the extent Hompe cited thirteen incidents where there was an altercation at the SLCRC, as set forth above, three involved a correctional officer and an inmate and a fourth occurred offsite between an inmate and an unknown assailant. In the eighteen months prior to Plaintiff's being injured, there were only two incidents, neither of which required that a participant receive medical care. See Prater v. Dunn, 89 F.3d 538, 542 (8th Cir. 1996) (holding that two weeks without incident was sufficient for officials to conclude the plaintiff was not in danger). Out of the thirteen incidents, only one required that a participant receive medical care and that occurred in January 2003, over five years prior to the incident at issue. See id. Moreover, there were no incidents in the laundry room. While Plaintiff argues that he is not required to prove that Defendants knew of the specifics of a risk, such as the actual location of an altercation or the actual perpetrator, the undisputed facts in the matter under consideration establish the absence of the requisite commonality between any prior incidents and the injury which Plaintiff suffered. See Elliott v. Byers, 975 F.2d 1375, 1376 (8th Cir. 1992) (finding

8

no deliberate indifference in violation of the Constitution where none of the prior incidents were similar to the attack at issue). As such, the incidents cited by Hompe do not establish, either by a subjective standard or an objective standard, that was a substantial risk of serious harm to Plaintiff anywhere in the SLCRC in July 2008 or that Defendants knew of, but disregarded a substantial risk to Plaintiff's safety.

In opposition to Defendants' Motion for Summary Judgment, Plaintiff cites evidence that unnamed SLCRC employees failed to follow policy and patrol the SLCRC; that these failures were conveyed to supervisors other than Defendants; that unnamed SLCRC employees slept on the job; that Defendant Curtis, who was charged with watching the morning video, was not watching the video feed at the time of the incident; that the videotape of the incident was destroyed before it could be produced for litigation; and that Defendant Curtis was not trained concerning the preservation of videotape. Doc. 66 at 2. This evidence, however, does not contradict the undisputed facts which establish that Plaintiff did not face a substantial risk of serious harm at any location in the SLCRC, including the laundry room at four o'clock in the morning, and which establish that none of the Defendants had knowledge, or should have had knowledge, of such a risk. The Eighth Circuit has specifically rejected the notion that, "in the absence of any objective evidence that a risk of harm is imminent, ... a prison official's violation of an internal regulation is a violation of constitutional dimension under the Eighth Amendment." T.S. Falls, 966 F.2d at 379 ("Our decision today stands for the proposition that a prison official's violation of an internal regulation does not give rise to an Eighth Amendment claim of 'cruel and unusual punishment,' in the absence of objective evidence demonstrating that prison officials were deliberately indifferent to a prisoner's constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates.") (citing Martin v. White, 742 F.2d 469 (8th Cir.1984)).

9

To the extent Plaintiff relies on Whitson v. Stone County Jail, 602 F.3d 920 (8th Cir. 2001), that case is clearly distinguishable from the matter under consideration as it involved a female inmate's being raped while being transported in a prison van with a male prisoner. The female inmate was "specifically instructed to sit in the second caged area [of the van] together with" the male prisoner. Id. at 922. When the female was raped, the transporting officers were playing loud music and the caged area of the van was dark. Id. Thus, the circumstances in which the sexual assault took place in Whitson are clearly distinguishable from the circumstances in the laundry room at the SLCRC on July 5, 2008, at 4:00 a.m., where there was no substantial risk of serious harm. See id. at 924 ("Given the facts advanced [] - inaccessibility of the rear cage, lack of visual contact with the victim and the aggressor by the remotely located supervisor, [the aggressor's] inadequate restraints, an overarching noise level and an almost total lack of supervision or observation during transport - it is virtually certain that the objective requirement is met in this case.").[4]

The court finds that the undisputed facts establish that there was no substantial risk of serious harm to Plaintiff at any location in the SLCRC, including the laundry room at four o'clock in the morning. See T.S. Falls, 966 F.2d at 378. Further, the undisputed facts establish that Defendants did not have any knowledge of a substantial risk to Plaintiff of any serious injury or knowledge that Smith posed a risk to Plaintiff. Further, the undisputed facts do not establish that Defendants should have had such knowledge. See Farmer, 511 U.S. at 832-33. As such, the undisputed facts establish that

---

[4] The Eighth Circuit, in Whitson, 602 F.3d 920, reversed the district court's granting summary judgment in favor of the defendants and remanded the matter. Upon so doing, the Eighth Circuit noted that whether or not the subjective element of an Eighth Amendment violation existed was a matter of proof for trial. Id. at 924 ("The pivotal issue in this regard deals with whether the defendants had a sufficiently culpable state of mind. Assuming the truth of her allegations, as we must, [the plaintiff] has sufficiently stated a 'deliberate indifference' claim. [The plaintiff] 'may establish [defendants'] awareness by reliance on any relevant evidence.'"). (quoting Farmer, 511 U.S. at 848).

10

Defendants were not deliberately indifferent in violation of the Constitution. Id.; Crow, 403 U.S. at 602. The court finds, therefore, that Plaintiff's § 1983 claim must fail and that summary judgment should be granted in Defendants' favor as to both Counts I and III of Plaintiff's Complaint.

**B.     Qualified Immunity:**

"In a § 1983 action, state actors may be entitled to qualified immunity." McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009) (citation omitted). Qualified immunity may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Qualified Immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

In Pearson v. Callahan, 129 S.Ct. 808 (2009), the Supreme Court held that there are two prongs to a qualified immunity analysis. A court must consider both whether a *constitutional right has been violated* and whether that *right had been clearly established* at the time of the alleged violation. The Court held in Pearson, that, while often appropriate, is not mandatory to consider these issues in any particular sequence. Id. at 818. Under Pearson, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818 (overruling, in part, in Saucier v. Katz, 533 U.S. 194, 201 (2001)).

The Eighth Circuit has explained that "[t]o withstand a claim of qualified immunity at the summary judgment stage, a plaintiff must assert a violation of a constitutional or statutory right; that the right must have been clearly established at the time of the violation; and, given the facts most

11

favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right." Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999) (quoting Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998)); see also Hunter v. Namanny, 219 F.3d 825, 829 (8th Cir. 2000). If the plaintiff establishes these elements, then the court must determine whether there is a genuine issue of material fact as to whether a reasonable governmental official would have known that his or her course of conduct violated the constitutional right, which allegedly was violated. See id.

Plaintiff argues that Defendants are not entitled to qualified immunity because there was a custom, practice, or policy of deliberate indifference and argue that the fact that the incident at issue involved a "surprise attack" does not entitled Defendants to qualified immunity. Plaintiff also contends that there is a genuine issue of material fact as to whether a reasonable officer would have known that failing to conduct checks or address complaints of staff sleeping during their shift violated Plaintiff's constitutional rights. Doc. 66 at 10-12.

First, as found above by the court, the undisputed facts establish that conditions at the SLCRC did not pose a substantial risk of serious injury to Plaintiff; that Defendants did not have, nor should they have had, knowledge that conditions posed a substantial risk of serious injury to Plaintiff; and that *Defendants' conduct did not violate a constitutional right*. See Pearson, 129 S.Ct. at 818. Further, as discussed above, under the circumstances of this case, alleged violations of internal regulations such as officers' allegedly sleeping on the job or failing to watch a video feed, are not violations of constitutional dimension. See T.S. Falls, 966 F.2d at 379. In any case, the right to be free from all attacks such as that suffered by Plaintiff has been rejected by the Eighth Circuit. See, e.g., Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998) ("[B]ecause prisons are dangerous places, '[h]ousing the most aggressive among us [and placing] violent people in close quarters,'... 'prison

12

officials are entitled to qualified immunity from claims arising out of a surprise attack by one inmate on another.'") (quoting McGill v. Duckworth, 944 F.2d 344, 345 (7th Cir. 1991) and Prosser v. Ross, 70 F.3d 1005, 1007 (8th Cir. 1995)).

As such, the court finds, in the alternative, that all Defendants are entitled to qualified immunity. See Pearson, 129 S.Ct. at 818; Harlow, 457 U.S. at 818; Mettler, 165 F.3d at 1202.

## CONCLUSION

The court finds, for the reasons set forth above, that summary judgment should be granted in Defendants' favor as to Counts I and III of Plaintiff's Complaint. The court further finds, in the alternative, that Defendants are entitled to qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment should be granted in its entirety; Doc. 58

**IT IS FURTHER ORDERED** that a Judgment incorporating this Memorandum Opinion shall issue on this same date.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of July, 2012.